# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| ANGELEQUE J. McNUTT, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 3:08-CV-21 |
| ) | (Phillips) |
| BECHTEL JACOBS COMPANY, LLC, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Bechtel Jacobs Company, LLC ("Defendant" or "BJC") [Doc. 34]. Plaintiff, a former employee at BJC, has filed suit under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. Plaintiff argues that Defendant violated the FMLA by retaliating against her for taking FMLA leave.[1]

---

[1] As the Court of Appeals for the Sixth Circuit has recognized, there are "two distinct theories of wrongdoing under the FMLA." Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007) (citations omitted). First, there is the "entitlement" or "interference" theory, which arises from §§ 2615(a)(1) and 2614(a)(1), and makes "it unlawful for employers to interfere with or deny an employee's exercise of her FMLA rights (§ 2615(a)(1)), and which require the employer to restore the employee to the same or an equivalent position upon the employee's return (§ 2614(a)(1))." Id. (citations omitted). Second, there is the "retaliation" or "discrimination" theory, which arises from § 2615(a)(2), and "prohibits an employer from discharging or discriminating against an employee for opposing any practice made unlawful by the Act." Id. (internal quotations and citations omitted).

      In her complaint, Plaintiff lists two causes of action [Doc. 1]. Count I is titled "Retaliation Under the Family Medical Leave Act." [Id. at 3]. Count II is titled "Common Law Retaliatory Discharge." [Id. at 4]. While Plaintiff asserts a retaliation theory under the FMLA, she also alleges in Count I that "Defendant violated 29 U.S.C. § 2615(a)(1) which states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this subchapter.'" [Id. at 3] [citations omitted]. Plaintiff's reference to Section 2615(a)(1) - which pertains to the "entitlement" or "interference" theory- suggests that Plaintiff has asserted both "interference" and "retaliation" claims. However, there is no separate count listing an "interference" claim, and the majority of allegations in Count I- which again, is titled "Retaliation Under the Family Medical Leave Act"-

1

Plaintiff has also filed a common law retaliatory discharge claim, arguing that she was fired for filing a workers' compensation claim.

The following issues are before the Court. First, is there a genuine issue of material fact regarding whether Plaintiff was fired for taking FMLA leave? In particular, is there a genuine issue of material fact regarding whether Defendant's proffered reasons for firing her were pretextual? Second, is there a genuine issue of material fact regarding whether Plaintiff was fired for filing a workers' compensation claim?

On May 17, 2010, Defendant filed a Motion for Summary Judgment [Doc. 34]. On June 16, 2010, Plaintiff responded [Doc. 42]. On June 25, 2010, Defendant filed a reply [Doc. 44]. For the following reasons, Defendant's Motion for Summary Judgment [Doc. 34] is **GRANTED IN PART AND DENIED IN PART. Accordingly, Plaintiff's FMLA retaliation claim is NOT DISMISSED, and Plaintiff's common law retaliatory discharge claim is DISMISSED.**

## I. BACKGROUND

Defendant has a contract with the Department of Energy ("DOE") to perform clean-up and waste management at the DOE's Oak Ride, Tennessee facilities. On or about May 16, 2005, Plaintiff was hired by Defendant as a Building Trades Laborer ("laborer"). Plaintiff worked at the K-25 Building in the East Tennessee Technology Park ("ETTP").

---

pertain to a retaliation claim.

In its Memorandum in Support of Its Motion for Summary Judgment, Defendant addresses Plaintiff's "interference" claim. [Doc. 36 at 13-16]. However, in her Response to Defendant's Motion for Summary Judgment, Plaintiff does not mention an "interference" claim. [Doc. 42]. In fact, Plaintiff's response - like her complaint- is divided into two sections: (1) Her FMLA retaliation claim; and (2) Her common law retaliation claim. [Id.].

Based upon the foregoing, it does not appear that Plaintiff asserted an "interference" claim in her complaint. In any event, Plaintiff abandoned that claim by not developing an argument or providing evidence in support. Accordingly, the Court finds that Plaintiff's only claim under the FMLA is a "retaliation" claim.

Pursuant to DOE policy, workers at the K-12 Building had to either possess a security clearance, or be escorted by others. Plaintiff did not have a security clearance so she was monitored by others.

On July 31, 2006, Plaintiff injured her right shoulder while at work. Plaintiff notified her supervisor, Superintendent Lee McQuade, that she had been injured on-the-job. Plaintiff filed a workers' compensation claim related to this injury, but it is unclear when she filed such claim.

On August 16, 2006, Plaintiff had hysterectomy surgery. Plaintiff used at least 340 hours of FMLA in relation to this surgery. After nearly nine weeks of medical leave, Plaintiff returned to work on October 16, 2006. Plaintiff returned with the same rate of pay.

On December 8, 2006, Plaintiff applied for FMLA leave to have surgery on her shoulder. On January 8, 2007, Plaintiff had surgery. Over the following weeks, Plaintiff used at least 110 hours of FMLA leave. On January 25, 2007, Plaintiff was fired while she was on FMLA leave.

Between December 2006 and February 2007, Defendant fired over forty employees as part of a reduction-in-force ("RIF"). According to Defendant, reductions were needed because:

> Work slowed down on areas of the ETTP site that did not require Laborers to have a security clearance because work on the project was nearing completion, and, at the same time, there was an increased demand for Laborers with at least an L clearance in the K-25 Building where work remained to be completed.

[Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment, Doc. 35 at 9]. On January 11, 2007, Defendant conducted an evaluation of the employees working at the ETTP (the "RIF Appraisal"). Laborers were evaluated and ranked pursuant to Defendant's "Craft Employee Evaluation Process" ("CEEP"). Categories included quality, job knowledge, initiative, attendance, and productivity. Employees were ranked on a scale of one to four (with four being the highest). Approximately the bottom 25% of laboreres (as evaluated by the

RIF Appraisal) were selected for reorganization or fired.

In her RIF Appraisal, Plaintiff scored in the bottom 25% of laborers. In her most recent evaluation- which was conducted in the fall of 2006, and prior to taking FMLA leave in relation to her shoulder surgery- Plaintiff was ranked in the top 25% of laborers. One of her former supervisors, James Bowling, states that Plaintiff was a good worker:

> During the period Angeleque McNutt was on the crew that I supervised she was a very good worker and was always willing to complete whatever scope of work was assigned to her. I personally never had any problems with her work and never had to take any disciplinary actions with her.

[Declaration of James Bowling, Doc. 41-5 at 2]. Mr. Bowling was the supervisor of Plaintiff's crew from May 2005 until January 2006, and from May or June 2006 until the fall of 2006. [Id.]. Mr. Bowling states that Plaintiff received high ratings in her previous evaluations:

> I was privy to several of the CEEP rankings of Angelque McNutt and she always ranked in the top twenty five percent (25%) in those rankings. The last ranking that I was part of was conducted in the fall of 2006 and Angeleque McNutt was ranked in the top twenty five percent (25%) of laborers at that time as well.

[Id.].

On January 24, 2008, Plaintiff filed suit under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq* [Doc. 1]. Plaintiff argues that Defendant violated the FMLA by retaliating against her for taking FMLA leave. [Id.]. Plaintiff also filed a common law retaliatory discharge claim, arguing that she was fired for filing a workers' compensation claim. [Id.]. On May 17, 2010, Defendant filed a Motion for Summary Judgment [Doc. 34]. On June 16, 2010, Plaintiff responded [Doc. 42]. On June 25, 2010, Defendant filed a reply [Doc. 44].

II.     **STANDARD OF REVIEW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary

4

judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zendith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); *see also, e.g.* Bridgeport Music, Inc. v. WB Music Corp., 508 F.3d 394, 397 (6th Cir. 2007) ("The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party."). With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the non-moving party to demonstrate the existence of genuine issues of material fact. Id. at 324. If the non-moving party fails to meet this burden, the moving party is entitled to summary judgment.

### III.  ANALYSIS

#### A.  Retaliation Claim Under the Family Medical Leave Act

##### 1.  Plaintiff Has Established a Prima Facie Case

Under the FMLA, an "eligible" employee may take up to twelve weeks of unpaid leave in certain situations, including for serious medical conditions. 29 U.S.C. § 2612(a)(1). Under the FMLA, employers may not retaliate against an employee for invoking her right to FMLA leave. Id.

5

§ 2615(a)(2); Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007). Plaintiff argues that Defendant violated the FMLA by retaliating against her for taking FMLA leave. Absent direct evidence of retaliation, courts apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). *See* Bryson, 498 F.3d at 570.

To establish a prima facie case of retaliation, Plaintiff must demonstrate that: (1) she was engaged in an activity protected by the FMLA; (2) she suffered an adverse employment action; and (3) there was a causal connection between her protected FMLA activity and the adverse employment action. Id. While the first two elements have been met, Defendant argues that Plaintiff failed to establish a causal connection between her FMLA leave and termination. In particular, Defendant argues that Plaintiff has only demonstrated temporal proximity between these events. While "temporal proximity itself is insufficient to find a causal connection," Randolph v. Ohio Dept. of Youth Servs., 453 F.3d 724, 737 (6th Cir. 2006) (citations omitted), Plaintiff has provided other circumstantial evidence. This case is similar to Cutcher v. Kmart Corporation, where the Court of Appeals for the Sixth Circuit held that the plaintiff established a prima facie case of retaliation. 364 F. App'x 183 (6th Cir. 2010).

In Cutcher, the plaintiff was terminated during a workforce reduction. Id. The plaintiff argued that she was fired for taking FMLA leave, and Kmart argued that she was fired for a low performance rating. Id. at 188. Like many businesses, Kmart conducts annual appraisals of its employees. Id. at 185. In her 2001-2002 appraisal, the plaintiff received the second-highest possible rating. Id. at 186. In 2002-2003, the plaintiff received the highest possible rating. Id. In 2003-2004, the plaintiff received the second-highest possible rating. Id.

In November 2005, the plaintiff learned that she needed surgery. Id. Beginning on

6

December 5, 2005, the plaintiff took FMLA leave. Id. On December 21, 2005, while the plaintiff was on leave, Kmart announced a nationwide reduction-in-force ("RIF"). Id. To determine which employees to terminate, Kmart conducted an RIF Appraisal. Id. at 187. The plaintiff received a much lower rating in her RIF Appraisal than in previous evaluations. Id. at 188. Only twenty days passed between the annual appraisal in which the plaintiff received an "exceeds expectations" comment, and the RIF Appraisal in which she was terminated. Id. Kmart stated that she received a lower score for the following reasons:

> For instance, she [the plaintiff's supervisor] stated that Cutcher [the plaintiff] did not treat customers courteously, did not want to run the registers when asked, did not make eye contact and speak to customers, did not handle returns well, did not work well with other associates, made inappropriate comments about other associates, had difficulty accepting decisions made by management, and that other associates asked not to work with her.

Id. Prior to the RIF Appraisal, the plaintiff "never received a single written or verbal reprimand and was never disciplined. Moreover, in each annual appraisal, she was rated as 'exceptional' or 'exceeds expectations.'" Id. The district found that summary judgment was appropriate for the employer, but the Court of Appeals for the Sixth Circuit reversed. Id. In particular, the Court of Appeals held that the plaintiff established a prima facie case of retaliation due to the discrepancy in appraisal ratings. Id. at 190.

For the same reasons, the Court finds that Plaintiff has established a prima facie case of retaliation. Like the plaintiff in Cutcher, there was a huge discrepancy between Plaintiff's RIF Appraisal and her prior evaluations. Prior to the RIF Appraisal, Plaintiff received high performance ratings. In her most recent appraisal (which was conducted in the fall of 2006), Plaintiff scored in the top 25% of laborers. A few months later, in January 2007 (the RIF Appraisal) Plaintiff scored in the bottom 25% of laborers. Defendant states that Plaintiff received a lower score in January

7

2007 because her work performance declined. Even assuming that Plaintiff's work performance declined between the fall of 2006 and January 2007, that is still a significant drop. Defendant does not explain in detail why Plaintiff's score dropped from the top 25% to the bottom 25% within months. The overwhelming evidence shows that Plaintiff had a favorable work history. One of Plaintiff's former supervisors, James Bowling, considered her a good worker. [Declaration of James Bowling, Doc. 41-5]. Mr. Bowling was the Supervisor of Plaintiff's crew from May 2005 until January 2006, and from May or June 2006 until the fall of 2006. [Id.]. As a supervisor, Mr. Bowling participated in the employee evaluations. [Id.]. According to Mr. Bowling, Plaintiff was "always ranked in the top twenty five percent (25%) in those rankings. The last ranking that I was part of was conducted late in the fall of 2006 and Angeleque McNutt was ranked in the top twenty five percent (25%) of laborers at that time as well." [Id. at 2]. The discrepancy in appraisal scores combined with the temporal proximity of the events- Plaintiff was on FMLA leave when she was terminated- is enough to establish a prima facie case of retaliation.

### 2. There Is A Genuine Issue of Material Fact Regarding Whether Defendant's Proffered Reasons Were Pretextual

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts back to the defendant "to demonstrate evidence of a legitimate, non-discriminatory reason for the adverse employment action." Cutcher, 364 F. App'x at 190-91 (citing Bryson, 498 F.3d at 570). If the defendant provides a non-discriminatory reason, then the burden shifts back to the plaintiff to prove that the "proffered reason is pretext for unlawful discrimination." Cutcher, 364 F.App'x at 190 (citing Bryson, 498 F.3d at 570).

The Court finds that Defendant has proffered a non-discriminatory reason for firing Plaintiff. Defendant states that Plaintiff was fired for two reasons. First, Plaintiff received a low performance rating in her RIF Appraisal. Second, Plaintiff did not have a security clearance, and there was a

growing need for them:

> In the months leading up to January 2007, work on the ETTP site was slowing down as the project was nearing completion. At approximately the same time, DOE funding and a demand for Laborers with at least an L clearance increased at the K-25 Building where work remained to be completed. Therefore, pursuant to its Craft Employee Evaluation Process ("CEEP") procedures, BJC evaluated and ranked the ETTP Laborers' job performance in anticipation of workforce reorganization and reduction. Importantly, whether a Laborer who was ranked near the bottom of her group was transferred to the K-25 Building or laid off depended on whether she possessed at least an L clearance.

[Defendant's Memorandum in Support of Its Motion for Summary Judgment, Doc. 36 at 7-8].

Because Defendant has articulated a non-discriminatory reason for its action, the burden shifts back to Plaintiff. A plaintiff may prove that the defendant's proffered reason was pretextual "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Wexler v. White's Fine Furniture, 317 F.3d 564, 576 (6th Cir. 2003). Having reviewed the evidence, the Court finds that there is a genuine issue of material fact regarding whether Defendant's proffered reasons actually motivated the action.

Like the plaintiff in Cutcher, "the same circumstantial evidence supporting the causal connection between her FMLA leave and her termination demonstrates that . . . [the Defendant's] proffered non-discriminatory reason was pretextual." Cutcher, 364 F.App'x at 191. In Cutcher, the Court of Appeals for the Sixth Circuit found that the following facts raised a genuine issue of material fact regarding pretext:

> . . . the temporal proximity between her leave and termination; the lack of documentation to corroborate her lower RIF appraisal scores; the lack of temporal proximity between the events that Kmart alleges justified her lower RIF appraisal scores and her termination; her documented favorable work history; the discrepancy between her prior annual appraisals and her RIF appraisal . . .

Id. The facts of the present case are very similar. Prior to the RIF Appraisal, Plaintiff received high

9

performance ratings. In her most recent appraisal (which was conducted in the fall of 2006), Plaintiff scored in the top 25% of laborers. In January 2007, Plaintiff scored in the bottom 25% of laborers. Defendant does not explain how Plaintiff's work performance declined during this period.

While Plaintiff's lack of a security clearance may have influenced her firing, it does not explain why she received a low rating in her RIF Appraisal. The history of high scores, positive feedback from supervisors, and temporal proximity (Plaintiff was on FMLA leave when she was fired), raises a factual question as to whether Defendant's proffered reasons were pretextual. Accordingly, Defendant's Motion for Summary Judgment [Doc. 34] is **DENIED, whereby Plaintiff's FMLA retaliation claim is not dismissed**.

    **B.**    **Retaliatory Discharge Claim Under Tennessee Common Law**

        **1.**    **Plaintiff Has Not Established a Prima Facie Case**

To establish a prima facie case of common law retaliatory discharge, Plaintiff must prove the following: (1) "The plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment." Anderson v. Standard Register Co., 857 S.W.2d 555, 558 (Tenn. 1993). The only issue is whether Plaintiff's claim for workers' compensation benefits was a substantial factor in her termination.

In her Response to Defendant's Motion for Summary Judgment, Plaintiff states the following:

> Of the four Laborers who were terminated on January 25, 2007, seventy-five (75%) percent had an on-the-job injury. In addition, the Defendant had hired the exact same number of Laborers two days prior to the January 25, 2007, termination. These facts plus the fact that the Plaintiff had previously been a highly ranked employee in the CEEP ranking and then was determined to be in the bottom twenty-five (25%) percent of the rankings after her on-the-job injury and claim for workers'

10

> compensation benefits raise genuine issues of material fact sufficient to warrant this case proceeding to a trial by jury.

[Plaintiff's Response to Defendant's Motion for Summary Judgment, Doc. 42 at 6-7]. It is irrelevant whether laborers who had on-the-job injuries were fired. The important question is whether workers who filed workers' compensation claims were fired. Plaintiff does not provide any evidence on this issue.

Plaintiff states that after she was injured, Superintendent Lee McQuade told her that "this is probably your last day here, but your shoulder is more important than a job." [Plaintiff's Response to Defendant's Motion for Summary Judgment, Doc. 42 at 2]. Plaintiff interpreted this comment to mean that "because I've been injured, I won't be a BJC employee anymore. And he was my supervisor." [Id.]. Assuming this statement was made- which Defendant disputes- this does not establish a causal connection between her filing a workers' compensation claim and her termination in January 2007. As Defendant correctly recognizes, "[i]t is inconceivable that this alleged comment could in any way be related to Plaintiff's workers' compensation claim filing, an event that Mr. McQuade had no knowledge of because it had not yet occurred." [Defendant's Memorandum in Support of Its Motion for Summary Judgment, Doc. 36 at 18]. Even if Mr. McQuade made the comment, it was directed to Plaintiff's injury, not her workers' compensation claim. To establish a prima facie case of retaliatory discharge, Plaintiff must prove that the filing of the workers' compensation claim- not the injury- substantially motivated the adverse employment decision. As Tennessee courts have recognized, "a plaintiff may not prevail on a wrongful discharge claim merely by showing that a causal connection exists between her on-the-job injury and her subsequent discharge. Instead, the plaintiff must show that her claim for workers' compensation benefits, as opposed to her injury, was the true or substantial reason for her discharge." Reed v. Alamo Rent-A-Car, Inc., 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999) (citations omitted).

Plaintiff's common law claim also lacks the temporal proximity of her FMLA claim. During her employment at BJC, Plaintiff filed two workers' compensation claims. In August 2005, Plaintiff injured her right knee while working and filed a workers' compensation claim. On July 31, 2006, Plaintiff injured her right shoulder at work. On August 1, 2006, Defendant notified AIG of Plaintiff's shoulder injury. It is unclear when Plaintiff filed a workers' compensation claim.

Assuming that Plaintiff filed a workers' compensation claim close to her July 2006 shoulder injury, she still received positive ratings after the claim was filed. Because Plaintiff received positive performance ratings *after* she filed the workers' compensation claim, there is less of a temporal relationship between the filing of the workers' compensation claim and her termination in January 2007. Prior to the RIF Appraisal- but after she filed a workers' compensation claim- Plaintiff received a positive rating in the fall of 2006. Thus, Plaintiff's common law claim lacks the temporal proximity of her FMLA claim.

In sum, the Court finds that Plaintiff has not provided sufficient evidence to establish a prima facie case. Accordingly, Plaintiff's common law retaliatory discharge claim is **DISMISSED WITH PREJUDICE**.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 34] is **GRANTED IN PART AND DENIED IN PART. Accordingly, Plaintiff's FMLA retaliation claim is NOT DISMISSED, and Plaintiff's common law retaliatory discharge claim is DISMISSED.**

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge